**PETTINARO CONSTRUCTION COMPANY, INC., a Delaware corporation, and Shelwen Corporation, a Delaware corporation, Defendants Below, Appellants,**

**v.**

**Alfred J. LINDH, Assignee of John B. O'Connell, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted March 12, 1981.

Decided April 10, 1981.

---

**1162** ■

David Roeberg (argued), and Frederick T. Haase, Jr. of Roeberg & Associates, P. A., Wilmington, for defendants below, appellants.

Alene S. Berkowitz (argued), of Knecht, Greenstein, Schagrin & Berkowitz, Wilmington, for plaintiff below, appellee.

Before DUFFY, McNEILLY and HORSEY, JJ.

**PER CURIAM:**

Presently before the Court is an appeal from a decision of the Superior Court denying appellants' motion for setoff of a judgment purchased by them against a judgment obtained against them. The pertinent facts, briefly stated, are as follows:

## I

In March, 1977, the Family Court entered a judgment against John O'Connell for child support arrears. Pursuant to the Family Court's order, this judgment was entered in the Judgment Docket of the Superior Court, thereby creating a lien upon whatever real estate O'Connell might have owned in New Castle County. At the same time O'Connell was suing appellants in an unrelated action in the Superior Court. The Superior Court entered judgment in favor of O'Connell on December 22, 1977, and this Court affirmed that judgment, in a reduced amount, on May 30, 1978. On January 12, 1978, the Family Court entered an order, pursuant to its broad powers under 13 *Del.C.* § 513, specifically imposing a lien on O'Connell's Superior Court judgment against appellants and restraining O'Connell from disposing of any proceeds from the Superior Court judgment, but not providing for entry of that order in Superior Court. On February 24, 1978, the Family Court entered another order which reasserted the lien on O'Connell's Superior Court judgment and further provided that the Family Court's January 12 and February 24 orders could be recorded in the Superior Court Prothonotary's office;

these orders were so recorded on February 27, 1978.

Also on February 24, 1978, appellants, with actual notice of the Family Court's lien on O'Connell's judgment against them, proceeded to purchase from a third party an unrelated 1976 Superior Court judgment against O'Connell. This transfer of the 1976 judgment to the use of appellants was recorded by the Superior Court Prothonotary on February 28, 1978.

On March 3, 1978, the Family Court held a hearing to finally determine the use to be made of the proceeds from O'Connell's Superior Court judgment on which the lien had been imposed. On March 6, 1978, the Family Court entered an order holding that O'Connell's child support obligations were of primary importance and requiring that "all of the net proceeds received from [appellants] shall be applied to the support arrears and none of them shall be used by [O'Connell] for any other purpose."

Lastly, in February, 1979, appellants filed their motion in the Superior Court to set off their purchased 1976 judgment against O'Connell's 1977 Superior Court judgment. Following oral argument, the Superior Court denied the motion, and this appeal ensued. Significantly, it appears that during all times pertinent to the matters relat-

ed above O'Connell has been substantially insolvent.

**II**

■ Preliminarily, appellants argue that certain actions taken by the Family Court in the child support proceedings were beyond the Court's statutory scope of authority. We disagree. Clearly, the Family Court had the power to enter the order requiring O'Connell to pay the child support arrears. 13 *Del.C.* § 513(1), (2).[1] We are also of the opinion that the Family Court had sufficient authority to impose the lien on O'Connell's Superior Court judgment. Essentially, the Court was sequestering O'Connell's property interests in that judgment in order to assure a fund for partial satisfaction of the child support judgment. See § 513(5).[1] The additional restraint placed by the Court on O'Connell to prevent him from disposing of any proceeds from the Superior Court judgment is specifically authorized by § 513(9)[1] and generally authorized by § 513(6).[1] Lastly, the provision that the various orders of the Family Court be entered in the records of the Superior Court Prothonotary is authorized by § 513(6) in conjunction with 10 *Del.C.* § 4734,[2] to the extent that the orders required O'Connell to pay a sum of money, and is otherwise generally authorized by 10

1. 13 *Del.C.* § 513 provides in pertinent part: "Where the duty of support has been determined to exist, the Court may:

    (1) Order the defendant to pay a certain sum periodically into the Court or directly to a dependent, his guardian, custodian, or trustee, for his support for so long as the obligation of support shall exist;

    (2) Order the defendant to pay a specific total amount into the Court or directly to a dependent, his guardian, custodian or trustee, in a lump sum or in such stated periodic amounts as the Court deems proper;

    \* \* \* \* \* \*

    (5) Enforce its order by attachment of the defendant or by sequestration of property;

    (6) Enter such other orders as the Court of Chancery heretofore possessed the power to enter, and as the interests of the parties may require, including but not limited to orders of custody and visitation;

    \* \* \* \* \* \*

    (9) Restrain defendant from transferring, encumbering, concealing or in any way disposing of any property except in the usual course of

    business or for the necessities of life, and, if so restrained, requiring him or her to notify any person to whom he or she has an obligation of support, or such person's guardian, custodian or trustee, of any proposed extraordinary expenditure and to account to the Court for all extraordinary expenditures made after the order is issued . . . ."

2. 10 *Del.C.* § 4734 provides:

    "The Prothonotary of each county shall, upon the receipt of any judgment or order from the Court of Chancery, calling for the payment of a sum of money, enter the same in accordance with the directions of the Court as provided in the judgment or order. The judgment or order, or part thereof, shall be entered in the same manner and form and in the same books and indexes as judgments and orders entered in the Superior Court. After the entry thereof the judgments or orders or parts thereof calling for the payment of money shall have the same force and effect as though the judgment had been entered in the Superior Court."

*Del.C.* § 4733.[3] In short, although we have not considered the merits of the Family Court's actions in this appeal from a decision of the Superior Court, we are convinced that, as a matter of legislative authorization, the Family Court did indeed have the statutory power to act as it did.

### III

■ Appellants' primary complaint on this appeal is that the Superior Court erred in denying their motion for a setoff. The well established rule in such cases is that, absent a controlling statute, the setoff of one judgment against another is not a matter of right but is, rather, addressed to the sound discretion of the court to which application for setoff is made. "Therefore, a set-off should be allowed only when, in view of all the circumstances, equity and good conscience require it to be made, substantial justice will be promoted thereby, and the rights and interests of third persons will not be infringed." 49 C.J.S. *Judgments* § 566(c) at p. 1043 (1947) (footnotes omitted); see also 47 Am.Jur.2d *Judgments* § 1003 (1969). Here the Superior Court considered the totality of the circumstances and concluded "that it would not be equitable to allow the setoff in this case."

■ We have fully reviewed the record in this matter and find no abuse of discretion by the Superior Court in its resolution of appellants' motion. O'Connell's liability for the child support arrears was established by the Family Court in March, 1977. O'Connell's money judgment against appellants was entered in the Superior Court in December, 1977. The Family Court impressed a lien on that judgment on January 12, 1978. Six weeks later appellants purchased the 1976 judgment against O'Connell to use as a setoff in O'Connell's action against them, despite the fact that appellants had actual notice of the lien imposed by the Family Court. Approximately one year later appellants filed their setoff motion in the Superior Court. Under such circumstances, the Superior Court could only have granted appellants' motion at the expense of O'Connell's children, the ultimate intended beneficiaries of the Family Court's actions. Given O'Connell's insolvency, we are persuaded that the course followed by the Superior Court in preferring the children over appellants which had purchased, with notice, the judgment for setoff purposes, was well within its discretion.

\*   \*   \*   \*   \*   \*

The decision of the Superior Court denying appellants' motion for a setoff is hereby

AFFIRMED.

---

**3.** 10 *Del.C.* § 4733 provides:

"(a) Any state judge may have recorded, docketed, indexed and/or filed, in any appropriate city, county or state office in this State, where legal documents are usually received for recording, docketing, indexing and/or filing, any interlocutory, or final judgment or order or part thereof, entered in any cause pending in any of the state courts. The state judge shall, in the judgment or order proposed to be recorded, docketed, indexed and/or filed, direct the manner in which it shall be recorded, docketed, indexed and/or filed.

(b) From the time any judgment or order referred to in subsection (a) of this section is received in any office designated in the judgment, it shall constitute notice to all persons who are charged with notice of matters filed in such office.

(c) When a judgment or order is received by any city, county or state officer pursuant to subsection (a) of this section, the person in charge of the office shall receive the judgment or order and record, docket, index and/or file the same in accordance with the directions set forth in the judgment or order.

(d) As used in this section, 'state judge' includes the Chancellor, and any Vice-Chancellor."